**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

18 Civ. 7253 (NG)(PK)

**IN RE DENTSPLY SIRONA, INC.**
**SECURITIES LITIGATION**

-------------------------------------------------------- x

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFF STRATHCLYDE**
**PENSION FUND'S MOTION FOR PRELIMINARY APPROVAL OF**
**PROPOSED SETTLEMENT**

**BARRACK RODOS & BACINE**

Michael A. Toomey
11 Times Square
640 Eighth Avenue, 10th Floor
New York, NY 10036
Telephone: 212.688.0782
Facsimile: 212.688.0783

and

Jeffrey W. Golan (pro hac vice)
Chad Carder (pro hac vice)
Jordan R. Laporta (pro hac vice)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: 215.963.0600
Facsimile: 215.963.0838

*Attorneys for the Strathclyde Pension Fund*
*and Lead Counsel for the Proposed Class*

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT .................................................................................. 1

II.  HISTORY OF PROCEEDINGS .............................................................................. 2

III.  ARGUMENT ............................................................................................................. 8

    A.  The Court Should Grant Preliminary Approval of the Proposed Settlement .................. 8

        1.  The Settlement Is Procedurally Fair ...................................................................... 9

            a.  Lead Plaintiff and Lead Counsel Are Adequate Representatives ...................... 9

            b.  The Settlement Is the Result of Good Faith, Arm's Length Negotiations ....... 10

        2.  The Relief Obtained for the Settlement Class Is Adequate ................................. 11

            a.  Proceeding through Trial and Appeal Would Carry Substantial Costs and Risks and Would Significantly Delay Recovery ............................................... 12

            b.  Additional Factors Evidencing the Adequacy of the Settlement ..................... 13

    B.  The Court Should Preliminarily Grant Certification of the Proposed Settlement Class ............................................................................................................ 15

    C.  The Court Should Preliminarily Approve the Proposed Plan of Allocation .................. 21

    D.  The Court Should Appoint A.B. Data to Handle Notification and Claims Processing and Approve the Method and Content of the Proposed Notice .................................... 22

    E.  The Deadlines that the Parties Propose for and in Advance of the Settlement Hearing ....................................................................................................................... 24

    F.  Lead Counsel Should Be Preliminarily Appointed Class Counsel ............................... 25

IV.  CONCLUSION .......................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................ 19, 20

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   77 F.4th 74–03 (2d Cir. 2023) ...................................................................... 5

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ................................................................... 9, 10, 11

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................ 20

*Enea v. Bloomberg, L.P.*,
   2014 WL 1044027 (S.D.N.Y Mar. 17, 2014) ............................................ 18

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
   594 U.S. 113 (2021) ......................................................................................... 5

*Guevora Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................... 13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258–84 (2014) ............................................................................. 5, 20

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................ 13

*In re BHP Billiton Ltd. Sec. Litig.*,
   2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019) ............................................ 14

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ............................................................. 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) .......................................................................... 17

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................. 21

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................... 22

*In re Initial Pub. Offering Sec. Litig.*,
   671 F.Supp.2d 467 (S.D.N.Y. 2009) ........................................................... 21

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
   2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) .......................................... 14

ii

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   2013 WL 3486990 (S.D.N.Y. July 11, 2013) ......................................................... 16

*In re NIO, Inc. Sec. Litig.*,
   2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023) ............................................... 16, 17, 18

*In re PaineWebber Ltd. Partnerships Litig.*,
   147 F.3d 132 (2d Cir. 1998) ................................................................................... 7

*In re Parmalat Sec. Litig.*,
   2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008) ....................................................... 20

*In re Pfizer Sec. Litig.*,
   282 F.R.D 38 (S.D.N.Y. 2012) ......................................................................... 20, 25

*In re PPDAI Grp. Inc. Sec. Litig.*,
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ................................................... *passim*

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................................ 14

*In re Tenaris S.A. Sec. Litig.*,
   2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ............................................... 7, 9, 11

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ...................................................... 24

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ...................................................... 14

*Marisol A. ex rel. Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ................................................................................. 17

*Martinek v. AmTrust Fin. Servs., Inc.*,
   2022 WL 326320 (S.D.N.Y. Feb. 3, 2022) .......................................................... 16

*Mikhlin v. Oasmia Pharm. AB*,
   2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ........................................................... 9

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................................. 21

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ............................................................................ 17

*Puglisi v. TD Bank, N.A.*,
   2015 WL 574280 (E.D.N.Y. Feb. 9, 2015) ............................................................ 8

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ................................................................................. 19

*Robidoux v. Celani,*
    987 F.2d 931–37 (2d Cir. 1993) ............................................................. 18

*Tsereteli v. Residential Asset Securitization Tr. 2006-A8,*
    283 F.R.D. 199 (S.D.N.Y. 2012) ......................................................... 17

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ........................................................................... 16

## Statutes

Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. §§ 78j, 78t ................................................ 2

Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4, *et seq.* ……............ *passim*

## Rules

Rule 23 ................................................................................................... *passim*

## I.    PRELIMINARY STATEMENT

Lead Plaintiff Strathclyde Pension Fund ("Lead Plaintiff" or "Strathclyde") respectfully submits this memorandum in support of the accompanying motion for preliminary approval of the Parties' proposed settlement of this Action ("Preliminary Approval Motion").[1]   Among the forms of relief sought in this motion and the accompanying Proposed Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement ("Proposed Order" or "Preliminary Approval Order"), Lead Plaintiff requests: preliminary approval of the Settlement; preliminary certification of a Settlement Class; preliminary approval of the proposed Plan of Allocation; approval of the content and method of notification of the proposed Settlement; appointment of Lead Counsel as class counsel; and the scheduling of a final approval hearing and establishing related deadlines for briefing, exclusions, and objections.

If the Court is inclined to grant preliminary approval of the Settlement, the Parties *respectfully request that the Court set the Settlement Hearing for a date no earlier than 110 days from entry of the Proposed Order*.  *See* Proposed Order ¶ 5.  If the Preliminary Approval Order is entered unchanged, with a date and time set by the Court for the Settlement Hearing, the Settlement would proceed on the following schedule:

| | |
|---|---|
| 15 Business Days Later | Notice and Proof of Claim and Release mailed by the Claims Administrator and posted on website to be developed for the Settlement |
| 10 Business Days Later | Summary Notice posted in the *Investor's Business Daily* and on *PR Newswire* |
| 35 Days Before Hearing | Filing of motion for final approval of settlement and plan of allocation, and filing of fee and expense application |
| 21 Days Before Hearing | Deadlines for submission of objections and/or exclusion requests |

---

[1]  All terms not defined herein are defined in the Stipulation and Agreement of Settlement ("Settlement Agreement") filed contemporaneously with this memorandum.   *See* Exhibit 1 to the Preliminary Approval Motion.

1

| 7 Days Before Hearing | Filing of reply briefs in further support of motion for final approval of settlement and plan of allocation, and fee and expense application |
| 7 Days Before Hearing | Filing of proof of mailing of Notice and Proof of Claim and Release and Issuance of Summary Notice |
| 120 Days After Mailing and Posting of the Notice | Deadline for submission of Proof of Claim and Release forms |

## II.    HISTORY OF PROCEEDINGS

On December 19, 2018, the original complaint was filed in this Action.   ECF 1.   On February 19, 2019, Strathclyde and one other set of institutional stockholders moved for appointment as lead plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. §§ 78j and 78t, as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §§ 78u-4, *et seq.*) ("PSLRA").   On March 11, 2019, the Court approved Strathclyde's motion for appointment as Lead Plaintiff and approved its selection of Barrack, Rodos & Bacine ("BRB") as Lead Counsel.   ECF No. 14.

On May 6, 2019, Lead Plaintiff filed a 129-page, 337 paragraph Class Action Complaint (the "First Complaint") asserting two mostly unrelated theories of liability with regard to Dentsply Intl., Sirona, and their successor-merged entity, Dentsply Sirona.   ECF 18.   The first theory alleged that Defendants failed to disclose a massive build-up of excess inventory far exceeding end-user demand at Patterson, which was Sirona's, and later Dentsply Sirona's, exclusive distributor of certain dental imaging products—the "Inventory Theory."   The second theory alleged that Defendants knew that Dentsply Intl.'s and later Dentsply Sirona's reported financial results had been propped-up by an illegal and anti-competitive conspiracy among the three largest distributors of dental products in the United States—the "Distributor Conspiracy Theory."   The First Complaint

2

alleged that the truth came to light through a series of corrective disclosures between August 2017 and August 2018.[2]

On June 20, 2019, and June 28, 2019, the Parties filed pre-motion letters in anticipation of Defendants' motion to dismiss the First Complaint. ECF 23 & 26. On July 3, 2019, the Court held a pre-motion conference that set a schedule for Defendants' motion to dismiss. During this conference, Lead Plaintiff also voluntarily dismissed its §14(a) claim without prejudice, conceding this claim had been brought 11 days after the expiration of the 3-year statute of repose for that claim when the original complaint was filed on December 19, 2018. From August to November 2019, the Parties fully briefed Defendants' motion to dismiss the First Complaint. ECF 42-47.

On December 16, 2020, while the motion was pending, the U.S. Securities and Exchange Commission ("SEC") and Dentsply agreed to settle an SEC investigation that began in 2017 by entering into a Cease-and-Desist Order. Because the Cease-and-Desist Order bolstered certain of the allegations Lead Plaintiff had made in the First Complaint, Lead Plaintiff requested permission from the Court to amend the First Complaint, and the Parties thereafter stipulated to a schedule for that amendment and for Defendants to move to dismiss that amended complaint. ECF 58.

On January 22, 2021, Lead Plaintiff filed a second amended complaint, and on January 25, 2021, filed a slightly modified version of that complaint that corrected the numbering of certain paragraphs (the "Complaint"). ECF 61. The Complaint added numerous allegations stemming

---

[2] The First Complaint alleged three sets of claims based on these theories: (1) violations of Sections 10(b) and 20(a) of the Exchange Act on behalf of all persons or entities, other than Defendants and their affiliates, who purchased Dentsply common stock between February 20, 2014 and August 7, 2018, and suffered damages as a result; (2) strict liability and negligence claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") related to materially untrue statements and misleading omissions made in connection with the Merger of Dentsply Intl. and Sirona; and (3) negligence claims under Sections 14(a) and 20(a) of the Exchange Act related to material misstatements and omissions in soliciting the approval of Dentsply Intl. shareholders for the Merger.

from the Cease-and-Desist Order but was otherwise identical to the First Complaint. On March 8, 2021, Defendants moved to dismiss the Complaint and to strike references to the Cease-and-Desist Order. From March to May of 2021, the Parties fully briefed Defendants' motions. ECF 67-74. Thereafter, while the motions were pending, the Parties exchanged and filed six letters to the Court concerning additional recent authority relevant to the pending motion to dismiss. ECF 76-81.

On March 29, 2023, this Court issued a 50-page Opinion and Order denying the motion to strike and, while finding that certain of the alleged misrepresentations and omissions were not actionable, otherwise denying Defendants' motion to dismiss. ECF No. 83.

Discovery in the Action commenced in May 2023, and Defendants ultimately produced over 480,000 documents in response to Lead Plaintiff's requests for production. Lead Plaintiff also produced documents certain documents to Defendants. In total, the Parties produced more than 2.4 million pages of documents. In addition, Lead Plaintiff (1) subpoenaed five third parties and received additional documents from each of them and (2) conducted depositions of three former Dentsply Sirona officers or employees and was preparing to take an additional 17 depositions at the time the Settlement was reached.

On September 29, 2023, Lead Plaintiff filed a motion for class certification, which was accompanied by a report from Lead Plaintiff's expert on market efficiency and common damages methodologies. ECF Nos. 101-03. On February 8, 2024, after taking certain class-related discovery, Defendants filed their response in opposition to the class motion, supported by the reports of three experts. ECF Nos. 122-26. On May 10, 2024, after taking certain other class-related discovery, including the depositions of all three of Defendants' experts, Lead Plaintiff filed a reply in further support of its class certification motion. ECF Nos. 132-33. In that reply, Lead Plaintiff explained:

> Defendants have presented extensive evidence and arguments to show that any alleged misrepresentations or omissions concerning the Distributor Conspiracy Theory had no impact on the price of Dentsply Intl. or Dentsply Sirona stock, either at the times they were made (*i.e.*, front-end impact) or at the times of the four alleged corrective disclosures (*i.e.*, back-end impact). Given Defendants' evidence in support of their lack of price impact argument with respect to the Distributor Conspiracy Theory claims, Lead Plaintiff no longer believes that the Distributor Conspiracy Theory is sustainable on a class-wide basis under the U.S. Supreme Court's decisions in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 279–84 (2014) (*Halliburton II*) and *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 122 (2021), and the Second Circuit's follow-on decision in *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 101–03 (2d Cir. 2023).

ECF No. 132 at 3-4 (footnote omitted). As a result, Lead Plaintiff modified the definition of the proposed class to include only persons who purchased the common stock of Dentsply Intl. or Dentsply Sirona on the open market from December 8, 2015[3] to August 6, 2018, inclusive, and were damaged thereby. "Through this modification, Lead Plaintiff [announced it] [wa]s no longer seeking class certification of: (1) the remaining Securities Act claims associated with the Merger; and (2) Exchange Act claims of Dentsply Intl. purchasers from February 20, 2014 through December 7, 2015." *Id.* at 1. Subsequently, the Parties filed sur-reply and sur-sur-reply briefs on class certification after taking certain additional class-related discovery. ECF Nos. 157-78, 168-69.

On November 27, 2023, Defendants filed a letter requesting a pre-motion conference regarding an anticipated motion for judgment on the pleadings, ECF No. 112, to which Lead Plaintiff responded on December 11, 2023. ECF No. 118. The pre-motion conference was held on March 15, 2024. Because of certain statute of repose issues, Lead Plaintiff voluntarily dismissed its Section 11 claims and its Section 15 claim against Defendant Michel.

---

[3] December 8, 2015, is the first trading day after the effective date of the Registration Statement, which Lead Plaintiff alleges is when Dentsply Intl. stock was inflated by the information contained in the Registration Statement relating to the fraud alleged in the Inventory Theory.

Defendants served their motion for judgment on the pleadings on June 7, 2024, arguing that: pre-Merger purchasers of Dentsply Intl. stock lacked standing to assert Exchange Act claims relating to statements about Sirona; Lead Plaintiff did not sufficiently allege any claim relating to statements made after August 9, 2017 or any claim against Defendants Casey, Alexos and Thierer; and Lead Plaintiff's individual claims under Section 12(a)(2) and Section 15 of the Securities Act, and Section 10(b) of the Exchange Act relating to the Distributor Conspiracy Theory, for which Lead Plaintiff was no longer seeking class treatment, should be dismissed.  From June to August of 2024, the Parties fully briefed Defendants' motion.  ECF Nos. 138-50.

The Parties began exploring the possibility of a settlement in early 2024, agreeing to engage in private mediation and retaining the Layn R. Phillips of Phillips of ADR Enterprises ("Judge Phillips") to act as mediator.  Judge Phillips was assisted by his Phillips ADR colleague, Caroline Cheng (together with Judge Phillips, the "Mediator").  On June 11-12, 2024, counsel for the Parties, Defendants' insurance carriers, and certain Party personnel participated in a two-day mediation session that ended without any agreement being reached.

The Parties continued to engage in settlement negotiations facilitated by the Mediator while the litigation continued to proceed and, after eight months of such negotiations, and in the midst of Lead Counsel taking and scheduling up to 20 fact depositions, Judge Phillips made a Mediator's Recommendation that the Action be settled for $84,000,000, which the Parties accepted on January 16, 2025.  The agreement's terms were memorialized in a term sheet executed on January 30, 2025 (the "Term Sheet").  The Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims against Defendants and Defendants' Releasees in return for a cash payment of $84,000,000 by or on behalf of Defendants for the benefit of the Settlement Class, subject to

certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

The Parties' counsel thereafter undertook extensive discussions and drafting sessions to create and formalize the Settlement documents, including the (a) Settlement Agreement; (b) Notice of (I) Pendency of Class Action and Proposed Settlement, (II) Settlement Heading, and (III) Motion for Attorneys' Fees and Expenses and Litigation Expenses ("Notice"); (c) Proof of Claim and Release; (d) [Proposed] Judgment Approving Class Action Settlement ("Final Judgment"); (e) [Proposed] Preliminary Approval Order; and (g) Summary Notice of (I) Pendency of Class Action and Proposed Settlement, (II) Settlement Hearing, and (III) Motion for Attorneys' Fees and Litigation Expenses ("Summary Notice"). The Settlement documents were executed on March 12, 2025.

Based upon their investigation, prosecution and mediation of the case, Lead Plaintiff and its counsel have concluded that the Settlement constitutes an outstanding achievement, and one that it is fair, adequate and reasonable to the members of the Class and in their best interests. Indeed, this Settlement appears to be the largest settlement of a private securities class action lawsuit in this District in a decade and the third largest settlement of a private securities class action lawsuit in this District ever. Based on Lead Plaintiff's direct oversight of the prosecution of this matter and with the advice of its counsel, Lead Plaintiff has agreed to settle the claims raised in the Action pursuant to the terms and provisions of the Settlement Agreement, after considering: (a) the financial benefit that the members of the Class will receive under the proposed Settlement; (b) the significant risks of continued litigation and trial; and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of the Settlement Agreement.

III.    **ARGUMENT**

A.    **The Court Should Grant Preliminary Approval of the Proposed Settlement**

In the Second Circuit, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *See In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *4 (E.D.N.Y. Apr. 22, 2024) (quoting *In re PaineWebber Ltd. Partnerships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998). This policy has even more force in complex class actions such as this one, as "[s]ecurities class actions are 'inherently complex,'" and substantial judicial resources can be conserved by avoiding further formal litigation. *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *9 (E.D.N.Y. Jan. 21, 2022) (citation omitted).

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements, with the approval process occurring in two stages. *First*, district courts perform a preliminary review to determine if notice of the proposed settlement should be sent to the settlement class. *Second*, after notice is provided and a hearing held, the Court determines whether to approve the settlement as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Effective December 1, 2018, Rule 23(e)(1) was amended to, among other things, specify that the crux of a court's preliminary review is whether notice should be provided. As courts in this District explain, "[t]o grant preliminary approval, the court need only find that there is 'probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness.'" *Puglisi v. TD Bank, N.A.*, 2015 WL 574280, at *1 (E.D.N.Y. Feb. 9, 2015) (citation omitted). As summarized below, and as will be detailed further in a motion for final approval of the Settlement, while at this stage Rule 23(e)(1)(B) only requires a finding "that the Court will likely be able to"

approve the Settlement under Rule 23(e)(2), the Settlement here easily satisfies all relevant factors of Rule 23(e)(2).[4]

### 1.       The Settlement Is Procedurally Fair

"In scrutinizing a proposed settlement to ensure fairness, adequacy, and reasonableness, the reviewing court must look first to the 'negotiating process leading up to the settlement.'" *Tenaris*, 2024 WL 1719632, at *3 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). "This examination is typically referred to as the Court's analysis of procedural fairness, and corresponds to the factors set forth in Fed. R. Civ. P. 23(e)(2)(A) (adequacy of representation) and (B) (arm's length settlement negotiations)." *Id.*

### a.       Lead Plaintiff and Lead Counsel Are Adequate Representatives

Rule 23(e)(2)(A) requires a finding of Lead Plaintiff's and Lead Counsel's adequacy. To determine the adequacy of Lead Plaintiff's and Lead Counsel's representation, the Court weighs whether: "(1) plaintiff's interests are antagonistic to the interest[s] of other members of the class, and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Mikhlin*, 2021 WL 1259559, at *4. Here, Lead Plaintiff has adequately represented the Settlement Class.

---

[4] At final approval, the Court will be asked to review the factors identified by Rule 23(e)(2), including whether: (a) Plaintiffs and Lead Counsel adequately represented the Settlement Class; (b) the Settlement was negotiated at arm's length; (c) the relief provided to the Settlement Class is adequate; and (d) the proposal treats Settlement Class Members equitably relative to each other. See Fed. R. Civ. P. 23(e)(2). Further, courts in this Circuit have traditionally considered several factors known as the "Grinnell factors": (1) the expense, complexity, and likely duration of the litigation; (2) the class's reaction to the settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing damages; (5) the risks of establishing liability; (6) the risks of maintaining the class throughout the litigation; (7) defendants' ability to withstand greater judgment; (8) the range of reasonableness of the settlement amount considering the best possible recovery; and (9) the range of reasonableness of the settlement amount given the risks of litigation. *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *2 (E.D.N.Y. Jan. 6, 2021) ("The court understands the new Rule 23(e) factors to add to, rather than displace, *Grinnell* factors ... [and] considers both sets of factors ... in its analysis.").

Having incurred substantial injury as a result of Defendants' alleged conduct, Lead Plaintiff "has 'an interest in vigorously pursuing the claims of the class.'" *Id.* (citation omitted). Further, because Lead Plaintiff's interests do not conflict with those of the Settlement Class, and Lead Plaintiff seeks to recover against Defendants on their own behalf and on behalf of the Settlement Class, the Court "has no reason to doubt the compatibility of the class representatives' and putative class members' interests." *Id.*

In addition, Lead Counsel possesses the requisite experience and qualifications to professionally and effectively conduct this Action. As detailed above, and as the Court is aware, Lead Counsel has performed substantial work in investigating and prosecuting claims in this Action, is experienced in handling complex litigation, especially of the type asserted in this Action, and has extensive knowledge of the applicable securities laws. *See generally* https://www.barrack.com/. The results of Lead Counsel's efforts in this Action, including overcoming Defendants' motions to dismiss, obtaining extensive discovery from Defendants and third parties, and vigorously negotiating the proposed Settlement, provide further confirmation of Lead Counsel's adequacy. Accordingly, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class.

### b.    The Settlement Is the Result of Good Faith, Arm's Length Negotiations

Rule 23(e)(2)(B) requires a finding that the Settlement was negotiated in good faith as a result of arm's length negotiations. As described above, the Settlement here was reached only after protracted, arm's-length negotiations before Judge Phillips and his colleague, Caroline Cheng.[5] As part of those negotiations, Lead Counsel and Defendants' counsel presented their

---

[5]    Judge Phillips, who played a critical role in mediating the case, observed: ***"The proposed Settlement is the result of vigorous arm's-length negotiation by all involved Parties. I believe, based on my extensive discussions with the Parties and the information made available to me***

respective views in detail regarding the merits of the litigation, Defendants' defenses, and significant issues pertaining to falsity, scienter, loss causation, and damages.  It was only after intensive back-and-forth negotiations conducted over eight months, and in response to a mediator's proposal, that the Parties reached an agreement in principle to settle the Action.  Thus, Lead Plaintiff and Lead Counsel had an adequate basis for assessing the strength of the Settlement Class's claims and Defendants' defenses thereto when they agreed to the Settlement.  As a result, the Court should preliminarily find that the Settlement is procedurally fair.

### 2.    The Relief Obtained for the Settlement Class Is Adequate

"Next, the Court evaluates 'the settlement's substantive terms' which correspond to Fed. R. Civ. P. 23(e)(C) (adequacy of relief) and (D) (equitable treatment of class members), and additionally involve the Court's analysis of the [*Grinnell*] factors," discussed above.  *Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *3 (citing *D'Amato*, 236 F.3d at 85).  Here, Lead Plaintiff and Lead Counsel believe that the Settlement consideration is more than fair, adequate and reasonable to the members of the Class and in their best interests, especially given the very real risks summarized below.[6]

---

*both before and during the Mediation, that the Settlement was negotiated in good faith and that the Settlement is fair and reasonable.*"  *See* Proposed Notice ¶ 26.  Judge Phillips' assessment, which is based on his serving as the Mediator and his track record (*see* http://www.phillipsadr.com/bios/layn-phillips/), constitutes a strong factor favoring approval.  *See In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated with the assistance of retired Judge Phillips and referring to him as "one of the most prominent and highly skilled mediators of complex actions"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure")

[6] Notably, this settlement is nearly double the average settlement amount ($47.3 million) of a federal securities class action for 2023, the most recent year for which such information is available.  *See* https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf

a.    **Proceeding through Trial and Appeal Would Carry Substantial Costs and Risks and Would Significantly Delay Recovery**

Fed. R. Civ. P. 23(e)(2)(C)(i) requires a finding that the $84,000,000 settlement is adequate, taking into account the costs, risks, and delay of trial and appeal. "As a general rule, securities class actions are notably difficult and notoriously uncertain to litigate." *PPDAI*, 2022 WL 198491, at *9. This Action is no exception. If the Parties did not agree to settle, Lead Plaintiff and members of the Settlement Class would have incurred substantial expenses while facing significant risks inherent in class action litigation. To obtain relief for the Settlement Class absent a negotiated settlement, Lead Plaintiff would have had to prevail at class certification and successfully defeat Defendants' extant motion for judgment on the pleadings, successfully oppose any *Daubert* challenges to exclude experts' testimony and opinions, successfully oppose summary judgment, prevail at trial, and successfully litigate any appeals. The Settlement Class would have also incurred additional expenses related to experts retained by Lead Counsel necessary to properly prosecute this case—*i.e.*, expert reports and rebuttals, as well as preparation for and appearances at expert depositions and trial testimony. An unfavorable outcome at any of those stages could have significantly diminished damages or precluded Settlement Class Members from recovering at all.

Although Lead Plaintiff believes the case against Defendants is strong, Defendants made credible arguments concerning falsity, scienter, loss causation, and damages. Defendants would have contested each of these elements of the case. For example, with respect to loss causation and damages, Defendants would have argued that Lead Plaintiff and the class's losses could not be attributed to the alleged fraud. *See PPDAI*, 2022 WL 198491, at *11 ("[e]stablishing loss causation in securities cases is a complicated concept, both factually and legally, and typically involve[s] conflicting expert opinion about the difference between the purchase price and the stock's 'true'

value absent the alleged fraud") (internal citation omitted).  These issues would have persisted throughout the litigation, representing real risks that Lead Plaintiff could ultimately recover materially less than the Settlement Amount – or nothing at all.  "If there is anything in the world that is uncertain when a [securities] case like this one is taken to trial, it is what the jury will come up with as a number for damages."  *Id.*  Moreover, the "risk of maintaining a class throughout this long and protracted litigation weighs in favor of settlement approval."  *Id.*  Given the complexities of the Action and these risks, the Settlement represents a more than reasonable resolution of this Action as the proposed Settlement will allow for a substantial "payment to the [Settlement] Class now, rather than a speculative payment potentially many years down the road."  *Guevora Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *10 (S.D.N.Y. Dec. 18, 2019); *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006).

> **b.    Additional Factors Evidencing the Adequacy of the Settlement**

Rule 23(e)(2)(C)(ii-iv) also instructs federal district courts to consider whether "the relief provided for the class is adequate, taking into account," among other things, the effectiveness of any proposed method of distributing relief to the class, the terms of any proposed award of attorneys' fees, and any agreement "required to be identified under Rule 23(e)(3)."  And Rule 23(e)(2)(D) requires a finding that "the proposal treats class members equitably relative to each other."  Each of these factors also supports preliminary approval here.  Here, the proposed Plan of Allocation is based on input from Lead Plaintiff's class and damages expert and, if approved, would fairly and reasonably distribute the Net Settlement Fund to Authorized Claimants on a pro rata basis based upon their recognized claim compared to the total recognized claims of all Authorized Claimants.  *See* Exhibit A-1 to the Proposed Order at Annex A.   As such, the Plan employs a methodology that is "appropriate and consistent with many other securities class action

settlements' plans of allocation, and treats class members equitably relative to each other." *PPDAI*, 2022 WL 198491, at *13.

The proposed Settlement also provides well-established procedures for processing claims of the Settlement Class and seeks to appoint A.B. Data, Ltd. ("A.B. Data"), a highly-respected and experienced claims administrator, as Claims Administrator for the Settlement. *See, e.g., Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) (A.B. Data appointed as Claims Administrator); *PPDAI*, 2022 WL 198491, at *13 (same). A.B. Data will process the claims of the Settlement Class under Lead Counsel's guidance, allow claimants the opportunity to cure any deficiencies in their claims or seek Court review, and mail or wire Authorized Claimants their pro rata share of the Net Settlement Fund (per the Plan of Allocation) after Court approval. This method is standard in securities class settlements and has long been found to be effective. *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020).

As stated in the proposed Notice, Lead Counsel anticipates seeking a fee of up to 30% of the Settlement Amount and up to $750,000 for reimbursement of litigation costs and expenses incurred in the prosecution of this Action. As will be further described in Lead Counsel's motion for attorney's fees and expenses, a fee of this percentage is well within the range of percentage-based fees that are awarded by courts in this Circuit in connection with settlements of federal class actions. *See, e.g., Lea*, 2021 WL 5578665, at *12 ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at *1, 6 (S.D.N.Y. Sept. 23, 2019) (one-third fee awarded for a $75 million settlement); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (30% fee awarded for a $50 million settlement). The motion for attorney's fees and expenses will also include information concerning the hours, lodestar and

14

expenses that Lead Counsel incurred in the prosecution of this Action, as well as the costs incurred by the Lead Plaintiff, to assist the Court in evaluating the fee and expense application.

Finally, the Parties have no side agreements other than a standard, confidential Supplemental Agreement, which provides that if the number of shares held by Settlement Class Members who opt out of the Settlement equals or exceeds a certain amount, Defendants will have the option to terminate the Settlement. *See* Settlement Agreement ¶ 35; *PPDAI*, 2022 WL 198491, at *13 ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement"). Therefore, consideration of these adequacy factors also shows that preliminary approval should be granted.

### B. The Court Should Preliminarily Grant Certification of the Proposed Settlement Class

The Parties agreed, as part of and as a condition for the Settlement, to have the Settlement proceed on behalf of a settlement class. Again, at this stage, the Court need only find that it will "likely be able to" certify the Settlement Class. Fed. R. Civ. P. 23(e)(1)(B). Consistent with the Settlement Agreement and pursuant to Rules 23(a), 23(b)(3) and 23(e), the Parties seek certification of a settlement class ("Settlement Class") consisting of all persons and entities who purchased or otherwise acquired Dentsply Intl. or Dentsply Sirona common stock from December 8, 2015 to August 6, 2018, inclusive (the "Class Period"), and who were damaged thereby.[7]

---

[7] This Settlement Class is equivalent to the modified class that Lead Plaintiff moved to certify when it filed its Reply Brief in support of the Class Certification Motion. *See* ECF Nos. 132-33. Excluded from the Settlement Class are Defendants and their families, and directors and Officers of Dentsply Sirona and their families and affiliates, as well as any persons who exclude themselves by submitting a valid and timely request for exclusion. Also excluded from the Settlement Class are persons who would be members of the Settlement Class based solely on their acquisition of Dentsply Sirona common stock in exchange for shares of Sirona in connection with the Merger and, for the avoidance of doubt, those who would be members of the Settlement Class based solely on their acquisition of Dentsply Sirona common stock in the Merger in exchange for Dentsply Intl. common stock that they purchased or acquired prior to December 8, 2015.

In accordance with Rule 23, certification is appropriate if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Additionally, "common" issues of law or fact must "predominate over any questions affecting only individual members," and a class action must be "superior" to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).  Rule 23(e) specifically authorizes the certification of "a class proposed to be certified for purposes of settlement … with the court's approval," with subpart (1) setting forth the requirements for notice to the proposed class and subpart (2) addressing the requirements to secure approval of the settlement proposal.

**Numerosity.**  "Courts in this Circuit presume numerosity at 40 putative class members." *Martinek v. AmTrust Fin. Servs., Inc.*, 2022 WL 326320, at *5 (S.D.N.Y. Feb. 3, 2022). In securities class actions, numerosity is satisfied where a large number of publicly owned, exchange-listed shares were outstanding and traded during the class period.  *PPDAI*, 2022 WL 198491, at *6.  As presented in Lead Plaintiff's motion for class certification and its supporting expert report, Dentsply Intl. began the Class Period with approximately 140 million shares outstanding, and Dentsply Sirona concluded the Class Period with approximately 222.3 million shares outstanding. ECF 103 (Exhibit A ¶¶ 24, 33).  While trading as Dentsply Sirona, the average weekly trading volume was 8.9 million shares.  *Id.* ¶ 69.  These facts support numerosity.  *See In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 2013 WL 3486990, at *1 (S.D.N.Y. July 11, 2013).

**Commonality, Typicality and Adequacy.**  Rule 23(a)(2) requires a showing that common issues of law or fact affect all class members.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) ("Commonality requires the plaintiff to demonstrate that the class members must 'have suffered the same injury.'").  "This is a 'low hurdle' that requires only a showing that

16

Plaintiff's claims depend upon a common contention that is of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke…even a single common question will do…." *In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *5 (E.D.N.Y. Aug. 8, 2023) (internal citation omitted); *accord Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). "The standard is particularly permissive in the context of securities fraud litigation." *NIO, Inc.*, 2023 WL 5048615, at *5.[8]

Here, the Complaint asserts that all Class members were injured as a result of the same misrepresentations and omissions. The case thus concerns many questions of law and fact common to the Class, including whether: (1) Defendants' alleged Class Period misstatements misrepresented or omitted material facts; (2) Defendants acted knowingly or recklessly in issuing such statements; and (3) Defendants' conduct resulted in damages to the Class. ECF 61 ¶ 111. Each of the foregoing questions focuses on Defendants' conduct and its Class-wide impact, making it subject to common proof. *NIO, Inc.*, 2023 WL 5048615, at *5; *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011).

Rule 23(a)(3)'s typicality requirement is met by demonstrating that "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant[s'] liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal citation omitted). "When it is alleged that the same unlawful conduct

---

[8] Courts have found that the class action mechanism is particularly well-suited for securities actions because the elements of the cause of action generally relate to the conduct of the defendants – their allegedly false and misleading public statements and omissions made in violation of the federal securities laws – and individual damages are likely to be too low to justify individual lawsuits. As such, many courts have held that "suits alleging violations of securities law … are 'especially amenable' to class action certification …." *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 205-06 (S.D.N.Y. 2012) (collecting cases).

was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met[.]" *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993); *see id.* at 937 ("minor variations in the fact patterns underlying individual claims" will not defeat class certification when the same unlawful conduct affected both named plaintiffs and the Class).

Here, Lead Plaintiff's claims are typical of the claims of the Class because the claims all relate to Defendants' alleged material misrepresentations, and Lead Plaintiff and the Class suffered damages of a similar type when the price of Dentsply common stock was corrected. ECF 61 ¶¶ 99-108. The proof necessary for Lead Plaintiff to prevail is the same that is required to prove the claims of the rest of the Class. Lead Plaintiff's claims are therefore typical of the claims of the Class. *See NIO, Inc.*, 2023 WL 5048615, at *6 (citing *Robidoux*, 987 F.2d at 936).

Courts generally interpret the adequacy requirement to mean that "named plaintiffs must be similarly situated to the proposed class in terms of interests and injury" and "may have no interests adverse to those of the putative class[.]" *Enea v. Bloomberg, L.P.*, 2014 WL 1044027, at *5 (S.D.N.Y., Mar. 17, 2014). Furthermore, "[p]art and parcel to the adequacy inquiry is the requirement that proposed counsel be able to 'fairly and adequately represent the interests of the class.'" *Id.* at *6. "This Circuit has interpreted this requirement to mean that class counsel must be 'qualified, experienced and generally able to conduct the litigation.'" *Id.* (citation omitted).

Strathclyde has shown itself to be a more than adequate class representative. Because it purchased Dentsply Sirona common stock during the Class Period and was injured by the same wrongful conduct as the Class, Lead Plaintiff has had every reason to prosecute this action vigorously. Further, Lead Plaintiff understands its role and obligation as a Class representative, and has diligently prosecuted this action for more than six years. Through counsel, Lead Plaintiff has: (1) investigated and filed two consolidated complaints; (2) successfully opposed Defendants'

motion to dismiss and motion to strike; (3) propounded document requests upon and engaged in meet and confers with Defendants; (4) retained and consulted experts; (5) evaluated over 2 million pages of documents produced by Defendants and third parties; (6) searched for, collected, reviewed and produced documents responsive to Defendants' discovery requests; (7) fully briefed a motion for class certification; (8) fully briefed Defendants' motion for judgment on the pleadings; and (9) took multiple fact and expert witness depositions. Lead Plaintiff also has overseen counsel, receiving regular status reports concerning this action, and has had a representative sit for a deposition taken by defense counsel. Lead Plaintiff's actions demonstrate a clear understanding of the case, active review of the pleadings and other court filings, and full participation in discovery. Lead Plaintiff will continue to oversee this action through settlement.[9]

Finally, Lead Plaintiff has protected the interests of the Class by retaining BRB as Class Counsel. Lead Plaintiff respectfully submits its chosen counsel satisfies the adequacy requirement of Rule 23(a)(4), as Lead Counsel is among the most experienced securities class action law firms in the country. *See* ECF No. 8-6 (BRB Resume).

**Predominance and Superiority.** The predominance prong of Rule 23(b)(3) is satisfied when the "'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation omitted). The Supreme Court has noted

---

[9] As an institutional investor, Lead Plaintiff is especially well-qualified to serve as the Class Representative given the intent of the PSLRA "to increase the likelihood that institutional investors will serve as lead plaintiffs." *See* 104 H.R. Rep. 369 (1995) (Conf. Rep.), reprinted in 1995 U.S.C.C.A.N. 730, 733.

that "[p]redominance is a test readily met in certain cases alleging … securities fraud...." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, common issues of law and fact predominate over any individual issues.  To recover under Section 10(b), all Class members must establish: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  All such elements, "other than reliance in cases that are not premised on the fraud-on-the-market, are subject to class wide proof[.]"  *In re Pfizer Sec. Litig.*, 282 F.R.D 38, 52 (S.D.N.Y. 2012); *see also In re Parmalat Sec. Litig.*, 2008 WL 3895539, at *8 (S.D.N.Y. Aug. 21, 2008). Lead Plaintiff can establish reliance on a class-wide basis through the fraud-on-the-market presumption.  Moreover, damages could be determined on a class-wide basis using a widely-accepted event study-based methodology to measure the amount of artificial inflation per share attributable to Defendants' alleged misconduct during the Class Period.

Here, the expert report submitted in support of Lead Plaintiff's motion for class certification, concluded that the market for Dentsply stock was efficient throughout the Class Period and that damages could be calculated using a common methodology on a class-wide basis. ECF 103 (Exhibit A).  These findings – along with the claims that Lead Plaintiff asserted in this Action on behalf of the Settlement Class – support that the Class may invoke the "fraud-on-the-market" presumption of reliance, which in turn supports a finding of predominance.  *See Halliburton II*, 573 U.S. 258.  Thus, Defendants' alleged misconduct affected all Class members in the same manner – namely, Defendants' alleged false and misleading statements and omissions is alleged to have artificially inflated the price of Dentsply common stock.  *See Amchem Prod.*, 521 U.S. at 625.

The "superiority" factor under Rule 23(b)(3) is satisfied because: (a) numerous investors are alleged to have suffered damages as a result of Defendants' misconduct; (b) it is unlikely that investors who lost relatively small amounts of money would file individual actions due to litigation costs (indeed, the statute of limitations has run on all the claims in this Action); (c) it is desirable to hear all such claims in one court; and (d) there is no difficulty in maintaining this case on behalf of the Settlement Class. Courts recognize the class action device as superior to other methods for fairly and efficiently adjudicating large-scale securities class actions, which assert claims on behalf of numerous individuals. The Supreme Court has explained that class actions "permit the plaintiffs to pool claims which would be uneconomical to litigate individually" and that "most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Accordingly, the Parties respectfully submit that this Court should preliminarily certify, for purposes of Settlement only, a Settlement Class under Rules 23(a), 23(b)(3) and 23(e).

### C.    The Court Should Preliminarily Approve the Proposed Plan of Allocation

Many courts, including courts in this Circuit, have confirmed that a plan of allocation suffices if the plan has "a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F.Supp.2d 467, 497 (S.D.N.Y. 2009). Here, Lead Plaintiff and Lead Counsel respectfully submit that the proposed Plan of Allocation, which is described in a multi-page discussion in Annex A to the Notice, is fair and reasonable. *See* Exhibit A-1 to the Proposed Order.

In this case, Lead Plaintiff alleges that Defendants made false statements and omitted material facts during the period from December 8, 2015 through August 6, 2018, inclusive, which

had the effect of artificially inflating the price of Dentsply Intl. common stock prior to the Merger and Dentsply Sirona common stock after the Merger.  Lead Plaintiff further alleges that corrective information was released to the market on August 9, 2017, October 2, 2017, May 6-7, 2018, and August 7, 2018, which partially and then completely removed the artificial inflation from the price of Dentsply Sirona common stock on those dates.

Under the proposed Plan of Allocation, "Recognized Loss Amounts" are based primarily on the difference in the amount of alleged artificial inflation in the prices of Dentsply Intl. and Dentsply Sirona common stock at the time of purchase and at the time of sale, or the difference between the actual purchase price and sale price.  In order to have a Recognized Loss Amount under the Plan of Allocation, a Settlement Class Member that purchased or otherwise acquired Dentsply Intl. and/or Dentsply Sirona common stock during the Class Period must have held those shares through at least one of the dates where new corrective information was released to the market and partially removed the artificial inflation from the price of Dentsply Sirona common stock.  Thus, the proposed Plan takes into account the stock drops that resulted from disclosures related to the remaining class claims in this Action, and provides for an allocation that divides the Net Settlement Fund dependent upon the purchase and sales prices (or prices following the disclosures) for each Class Member.  This treats all similarly situated Class Members equitably and should be preliminarily approved.  *PPDAI*, 2022 WL 198491, at *13.

**D.    The Court Should Appoint A.B. Data to Handle Notification and Claims Processing and Approve the Method and Content of the Proposed Notice**

The law provides that "[i]f the court preliminarily approves the settlement, it then must direct the preparation of notice informing class members of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing," *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).  Lead Plaintiff requests that the Court appoint as Claims

Administrator A.B. Data, a well-respected and experienced claims administrator.  *See* Proposed Order ¶ 7.  A.B. Data was selected through a competitive bidding process, has more than 40 years of experience in every aspect of class action notification and settlement administration, and has been appointed by dozens of courts and processed billions of dollars of settlement proceeds.  *See* https://abdataclassaction.com/.  If appointed, A.B. Data would have primary responsibility for notification and communications with potential Settlement Class members, processing claims, and processing requests for exclusion from the Settlement Class.

Lead Plaintiff also requests that the Court approve the form and content of the proposed Notice and Summary Notice, and approve the proposed Proof of Claim and Release.  *See* Exhibits A-1, A-2, and A-3 to the Proposed Order.  The Notice will advise Class Members[10] of (i) the pendency of the class action; (ii) the essential terms of this Settlement; (iii) the Plan of Allocation for distributing the Net Settlement Fund to members of the Settlement Class; (iv) information regarding Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses; and (v) specifics on the date, time and place of the Settlement Hearing.  The Notice advises that the Court will exclude from the Class any Class Member who requests exclusion through the procedures and within the deadline set forth in the Notice for doing so, and further describes (1) the binding effect of a judgment on Class Members; (2) how to object to the proposed Settlement,

---

[10] Defendants will be providing the Claims Administrator with shareholder lists reflecting record holders of the Company's stock during the Class Period.  The proposed Claims Administrator will send the Notice and Proof of Claim and Release to those identified stockholders as well as approximately 4,950 banks, brokers, and nominees as part of the initial mailing.  It will also send an email blast to the top institutional investors, which provides the Notice, Proof of Claim and Release, and electronic filing instructions.  In addition, it will send an email that includes the Notice to the Depository Trust Company ("DTC"), a limited purpose trust company that acts as a clearinghouse to process and settle trades in corporate and municipal securities, to post to DTC's Legal Notice System ("LENS") system.

Plan of Allocation and/or Lead Counsel's fee and expense reimbursement request; and (3) how to submit a Proof of Claim and Release.

The Parties believe that the form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7), which requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, *1, 3 (S.D.N.Y. Nov. 20, 2008).

Lead Plaintiff has attached as Exhibit A-1 to the Proposed Order the text of the Notice that the Parties propose to distribute to the Class by mail to all potential class members whose addresses are known to and provided by Defendants.[11]  In addition, the Parties have prepared a proposed Summary Notice, attached as Exhibit A-3 to the Proposed Order, that they suggest should be printed once in the national edition of the *Investor's Business Daily* and disseminated once on *P.R. Newswire*.  Proposed Order ¶ 7(d).

E.    **The Deadlines that the Parties Propose for and in Advance of the Settlement Hearing**

The Proposed Preliminary Approval Order, if approved, will establish pertinent deadlines in connection with the proposed Settlement as set forth fully *supra*. at 1-2. *See also* Proposed

---

[11]  The Proposed Preliminary Approval Order requires that brokers and other nominees who purchased or acquired Dentsply common stock during the Class Period for the benefit of another person or entity follow certain procedures to provide the Notice and Proof of Claim and Release to those beneficial owners.  It further provides that such brokers and nominees may seek reimbursement of their reasonable expenses actually incurred in complying with those procedures. *See* Proposed Order ¶ 9.

Order ¶¶ 7(b), 7(c), 7(d), 7(e), 11, 17, 18.  Most of the deadlines are set based on certain numbers of days following entry of the Proposed Order or certain numbers of days prior to the Settlement Hearing.  The Parties are also requesting that the Court enter a date and time for the Settlement Hearing in the Proposed Order, *see* Proposed Order ¶ 5, and **respectfully suggest that the Court set the Settlement Hearing for a date not earlier than 110 days from entry of the Proposed Order**.

### F.    Lead Counsel Should Be Preliminarily Appointed Class Counsel

Fed. R. Civ. P. 23(g) requires a court to appoint class counsel when certifying a class action. As detailed above, and as the Court is aware, Lead Counsel has performed substantial work in investigating and prosecuting claims in this Action and is experienced in handling complex litigation, especially of the type asserted in this Action, and has extensive knowledge of the applicable securities laws.  These facts all support appointing Barrack, Rodos & Bacine as Class Counsel pursuant to Fed. R. Civ. P. 23(e).  *See In re Pfizer Secs. Litig.*, 282 F.R.D. at 47 (appointing class counsel that had "devoted considerable resources to this case since it was first filed, and has effectively protected the interests of Plaintiffs and the putative class").

## IV.    CONCLUSION

For the foregoing reasons, the Parties in this Action respectfully submit that the Court should grant preliminary approval of the proposed Settlement, thereby authorizing dissemination of the proposed Notice and Summary Notice, and establish deadlines for Proof of Claim and Release submissions, for Objections and Requests for Exclusion from the Settlement Class, and in connection with Lead Plaintiff's anticipated motions for final approval of the Settlement and proposed Plan of Allocation, and Lead Counsel's anticipation motion for an award of attorney's fees and reimbursement of expenses incurred in the prosecution of the Action.

Dated:  March 17, 2025                                   Respectfully submitted,

**BARRACK, RODOS & BACINE**

By:  */s/ Michael A. Toomey*
Michael A. Toomey
11 Times Square
640 Eighth Avenue, 10th Floor
New York, NY 10036
Telephone:  212.688.0782
Facsimile:  212.688.0783

Jeffrey W. Golan (pro hac vice)
Chad Carder (pro hac vice)
Jordan R. Laporta (pro hac vice)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Fax: (215) 963-0838

*Attorneys for the Strathclyde Pension Fund and Lead Counsel for the Proposed Class*